## McNEIL v. HALL.

(Supreme Court, Appellate Division, Fourth Department. July 6, 1905.)

1. TROVER—NATURE OF ACTION—ASSERTION OF EQUITIES.

In an action purely at law for conversion, plaintiff cannot avail himself of equities which may exist in his favor, nor assert an equitable estoppel against defendant.

2. SALES—EXPIRATION OF CONTRACT—DUTIES OF SELLER.

Where a contract for the sale of timber required the buyer to remove the timber from the land before a certain date, the seller was not required, in order to protect his rights, to forbid the buyer to move his sawmill onto the premises after the expiration of the time limit, until fully advised of such rights.

3. SAME—EXPIRATION OF CONTRACT—RIGHTS OF BUYER—VESTING OF TITLE.

A contract for the sale of standing timber provided for the payment of the purchase price in installments, and bound the buyer not to cut any timber until the second payment should be made, and not to draw off any bark until the third payment should be made, nor to draw off any timber or logs until the fourth payment should be made. The seller further expressly reserved title to all the lumber and bark until the respective payments should be made, and the buyer agreed "to draw all the said timber off the lot on or before April 12, 1903, after which date he has no further right on said premises or in any timber left thereon." Held, that all tim-

ber, logs, or bark, whether cut or uncut, remaining on the premises after the date specified, became the absolute property of the seller, and the buyer ceased to have any interest therein after such date.

**Appeal from Trial Term, Erie County.**

Action by Catherine McNeil against Daniel Hall. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

The action was commenced on the 31st day of May, 1903, to recover damages for the alleged conversion of a quantity of logs which were skidded and on premises belonging to the defendant, which logs the plaintiff claimed to own and to be entitled to the possession of. The defendant denied such ownership and right of possession, and refused to surrender the property after demand duly made. The ownership and right of possession of the plaintiff was the only issue presented by the pleadings or by the proof. The value of the logs in question was conceded to be $1,300. Upon the trial there was no dispute as to the facts, and at the close of the evidence the defendant moved for a nonsuit, which was denied, and upon plaintiff's motion the court directed a verdict in her favor for $1,300, besides costs, to both of which rulings defendant's counsel duly excepted. Judgment was entered accordingly, and from it and the order denying defendant's motion for a new trial this appeal is taken, which involves only questions of law arising upon a conceded state of facts.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

C. W. Stevens (F. A. Robbins, of counsel), for appellant.
Shire & Jellinek (Vernon Cole, of counsel), for respondent.

McLENNAN, P. J. On and prior to the 12th day of April, 1901, the defendant was the owner of four parcels of land situate in Livingston county, N. Y., on which was a quantity of standing pine, hemlock, and hardwood timber. On that day the defendant, as party of the first part, entered into a written contract with one J. F. Dieffenbacker, party of the second part, by which said party of the first part agreed to sell the second party all the timber which was over six inches in diameter two feet from the ground, standing on said four parcels of land, for the sum of $5,000. The second party agreed to purchase the same at the price named, and to pay such purchase price in five installments; the amount of each and the time and manner of making the same being clearly stated. The contract further provided:

"The party of the second part, it is expressly agreed, shall not cut any timber on the lot, until the second payment above mentioned is made, neither shall he draw off any of the bark cut upon the land, until the third payment of $2,000 is made, nor draw off any of the timber or logs until the fourth payment of $1,000 is made, and after that he agrees to leave upon the lot at all times sufficient lumber or logs to secure the payment of the last installment.

"The party of the first part expressly reserves the title to all of said lumber and bark and lumber made therefrom until the respective sums above mentioned have been fully paid, the party of the second part having the right to enter and cut and prepare the same, but has not the right to move any of the said timber from the premises until the moneys above mentioned have been paid in the manner and times heretofore stated.

"In case the party of the second part neglects or refuses to make the payments, or any of them as above provided, then it is agreed that the party of the first part may retain all sums that the party of the second part has paid

hereon, as liquidated damages for the breach of said contract, as well as all bark and timber cut, and the rights of the party of the second part under this contract shall then cease and determine.  *   *   *

"Party of the second part to have the privilege of putting a mill on the lot to saw the lumber if he so elects, and in that case he agrees to use all proper diligence to protect the said premises or adjoining lands from damage by fire and to rebuild or replace or pay the value of all fences burned by reason of the acts of his agents and servants under this contract.

"Party of the second part further agrees to draw all the said timber off the lot on or before April 12th, 1903, after which date he has no further right on said premises or in any timber left thereon.  *   *   *

"This agreement to bind the heirs, executors, administrators and assigns of the respective parties."

It is conceded that by mesne assignments the plaintiff at the time of the commencement of this action was vested with all the title, rights, and interest in and to the logs in question which Dieffenbacker would have had if no assignment had been made by him, and he had done and performed all the acts which the several assignees, or any of them, did in the premises. Soon after the execution of the contract referred to, Dieffenbacker, or one of the several assignees, entered upon the premises of the defendant, and in due time, and before the 12th day of April, 1903, the time when it is alleged such contract expired, and the vendee's rights thereunder terminated, had cut all the timber into logs, had fully paid the purchase price as specified in the agreement, and had peeled and removed from the premises all the bark and all the logs, with the exception of those which are the subject of this litigation. Those were cut and skidded, but remained on defendant's premises after such date; and soon thereafter the plaintiff moved a portable sawmill onto defendant's premises, set it up, and prepared to saw the logs in question. When the plaintiff was ready to commence such operations, the defendant asserted that the logs were his, because allowed to remain upon the premises after the time specified in the contract, and forbade the plaintiff from in any manner interfering with or taking possession of the same. Upon it being suggested to him by an agent or employé of the plaintiff that, if such was his claim or attitude, he should have made his position known before arrangements were completed for sawing the logs, his answer was that he had not consulted counsel, and, in substance, that he was not sure what his rights were in the premises. At all events, he refused to permit the plaintiff to take possession of the logs after demand duly made upon him, and thereupon this action was brought.

It is apparent that plaintiff's right to recover, if it exists, must be found in the written instrument. This is an action at law, pure and simple, and any equities which may exist in plaintiff's favor are not available here. Therefore the suggestion is unimportant that in equity the defendant should be held to be equitably estopped from asserting title to the logs after, with his knowledge, and without protest from him, the plaintiff incurred the expense of moving and setting up a portable mill on defendant's premises, with which to manufacture the logs in question. Nor is there any proof of any act done by the defendant from which an express or implied extension of the contract could be found. Presumably when the plaintiff

moved the sawmill onto defendant's premises she knew as well as he did that the time limit expressed in the contract had expired. The defendant was not called upon to forbid such action on her part until fully advised of his rights in the premises. No consent to her acts is claimed to have been given by him. Therefore, as above suggested, the rights of the parties must be measured by the provisions of the written contract.

It is the contention of the appellant that the sale of the timber in question, as evidenced by the written agreement, was a conditional sale; that the title thereto did not pass upon the execution of the contract or upon the payment of the purchase price, nor unless the timber was cut and the logs removed prior to the 12th day of April, 1903; that the removal as well as the payment was a condition precedent to the vesting of title in the vendee; that, if payment was made according to the terms of the agreement, the vendee had the right to remove at will within the specified time; that upon such payment being made the title vested, subject, however, to being divested in case removal was not made within the specified time. This, we think, is the fair interpretation of the meaning of the agreement.

It is claimed by the respondent that upon the payment of the purchase price the title vested absolutely in the vendee named in the contract, or in his assign, and that the words in the contract to which attention has been called ought not to be construed in such manner as to reinvest the defendant with such title, or so as to create a forfeiture in his behalf in any timber which was not removed within the time which it was agreed it should be. It is unnecessary to determine the precise nature of the title which the vendee acquired in the first instance by virtue of the contract, because almost in express language it provided that he should be prevented from asserting such title, whatever its nature, to any logs which remained upon defendant's premises after the 12th day of April, 1903. He agreed that he would not exercise any acts of ownership or dominion over such logs after that date. The contract is not ambiguous. Language could hardly express an intention more plainly than does the sentence to which attention has been called, viz.:

"Party of the second part further agrees to draw all the said timber off the lot on or before April 12th, 1903, after which date he has no further right on said premises or in any timber left thereon."

Clearly the word "timber," as used in the first clause of the sentence, has reference to timber already cut; and there is no basis for holding that the word "timber," as used in the last clause, has a different meaning, and refers to standing timber. The vendee agreed to draw all timber before a certain date, and he agreed to forfeit his right to all timber left on the premises after such date. An examination of the entire contract, and especially of the provision last referred to, leads to the conclusion that it was the intention of the parties that all timber, logs, or bark which the defendant sold, whether cut or uncut, and which remained on the premises after the 12th day of April, 1903, should become the absolute property of the defendant, and that such intention was clearly

expressed by the language used in the instrument, and therefore the plaintiff ceased to have any right, title, or interest in or to the logs or timber in question after said date.

A contract very similar to the one under consideration was construed in the case of Boisaubin .v. Reed, *41 N. Y. 323; and it was held, in substance, that, the parties by contract having fixed the time within which the vendee might enter the land and carry away the timber, after the expiration of such term the vendee had no right to enter the vendor's premises for the purpose of removing the same; and in that case the court said, "The vendee has no title to the timber by cutting logs and leaving them upon the land, but, to complete his title, he must also remove the logs within the time." To the same effect is Kellam v. McKinstry, 69 N. Y. 264, in which, in a very exhaustive opinion written by Judge Miller, the case of Boisaubin v. Reed, supra, is cited with approval. See, also, Inderlied v. Whaley, 65 Hun, 407, 20 N. Y. Supp. 183; Grange v. Palmer, 56 Hun, 481, 10 N. Y. Supp. 201. In that case, also, the case of Boisaubin v. Reed is referred to with approval, and it is said that the soundness of the proposition as stated by the court in that case cannot be questioned.

It follows that the judgment and order appealed from should be reversed, and a new trial granted, with costs to the appellant to abide event.

Judgment and order reversed, and new trial granted, with costs to appellant to abide event. All concur.